IN THE UNITED STATES BANKRUPTCY COURT FOR THE
WESTERN DISTRICT OF MISSOURI

| | |
|---|---|
| IN RE: ) | |
| ) | |
| CHARLES WILLIAM BAUER II and ) | Case No. 10-41808-13 |
| SANDRA SUE BAUER, ) | |
| ) | |
| Debtors. ) | |

ORDER GRANTING TRUSTEE'S MOTION
TO DENY CONFIRMATION OF PLAN

The Chapter 13 Trustee filed a motion to deny confirmation of the Debtors' proposed Chapter 13 Plan. He asserts that, during the fraudulent transfer look-back period, Debtor Charles William Bauer II transferred his partial interest in real estate to his mother and that the Plan does not provide for payment of the value of his interest to unsecured creditors in violation of 11 U.S.C. § 1325(a)(4). This is a core proceeding under 28 U.S.C. § 157(b)(2)(L) over which the Court has jurisdiction pursuant to 28 U.S.C. §§ 1334(b), 157(a), and 157(b)(1). For the reasons that follow, the Trustee's motion to deny confirmation will be GRANTED.

At the hearing on this matter, the Debtors' counsel made representations of fact on the record, and the Trustee agreed to those representations. No evidence or testimony was offered at the hearing. According to the represented facts, the mother of Debtor Charles Bauer lives on property which has been the family farm for many years. In 1996, by warranty deed, the mother transferred ownership of the farm

property to Charles and his sister, without telling either of them that she had done so. The mother has continuously lived on the property, and earns income from the farm operations there. The Debtors do not live there. In 2009, the mother asked Charles to sign a warranty deed transferring the property back to her, which he did. The Debtors' counsel offered no reason why the mother made the 1996 transfer or why she requested Charles to transfer the property back.[1]

On April 14, 2010, the Debtors filed this Chapter 13 bankruptcy case. The parties agree that the 2009 transfer from Charles to his mother occurred within the two-year look-back period for fraudulent transfers under § 548 of the Bankruptcy Code. They also appear to agree that the mother received no value in exchange for the transfer and that the Debtors were insolvent at the time of the transfer.

The Chapter 13 Trustee asserts that, because the transfer to the mother could be avoided as a fraudulent transfer in a Chapter 7 case, the value of Charles' interest in the property would be included in a Chapter 7 estate and, therefore, the Debtors' plan must provide for the payment of that amount to unsecured creditors pursuant to §

---

[1] Counsel mentioned that Charles may have thought that the 2009 deed was to correct an error caused by his father having a similar name. The petition identifies Charles as "Charles William Bauer II." However, counsel did not state that that was, indeed, the mother's reason for titling the property as she did. In view of the fact that the 1996 deed also added Charles' sister as an owner, and that no evidence was offered to show that a scrivener's error had been committed in the 1996 deed, it appears that Charles' name was intentionally included on the 1996 deed, most likely as an estate planning tool, as opposed to being a scrivener's error.

2

1325(a)(4). The issue, thus, is whether Charles owned that interest prior to the 2009 transfer.

Section 1325(a)(4) of the Bankruptcy Code provides that a Court should confirm a plan if "the value, as of the effective date of the plan, of property to be distributed under the plan on account of each allowed unsecured claim is not less than the amount that would be paid on such claim if the estate of the debtor were liquidated under chapter 7 of this title on such date."[2] In a Chapter 7 case, a trustee is able to avoid fraudulent transfers under §§ 548 and 550 and bring such assets into the estate for the benefit of creditors. Hence, if the 2009 transfer of the property to the mother would be avoidable by a Chapter 7 trustee, the Debtors must propose a plan which takes such a recovery into account.

The first issue here is the nature of Charles' interest in the property at the time he transferred it back to his mother in 2009. In other words, would the property have been included in his bankruptcy estate if the transfer to the mother had not occurred? A debtor's bankruptcy estate is comprised of all legal or equitable interest of the Debtors in property as of the commencement of the case.[3] Section 541 is very broad

---

[2] 11 U.S.C. § 1325(a)(4).

[3] 11 U.S.C. § 541(a)(1).

and includes property held jointly by a debtor and a nondebtor.[4] The nature of a debtor's interest in property, however, is determined by non-bankruptcy state law.[5]

Under Missouri law, the holder of title to real property is presumed to be the owner of such property:

> Real property recordation is a subject with roots in history deeper [than] the birth of our nation and, despite attempts to develop a better method . . . . , it remains largely unchanged over the centuries. The purpose of recordation is to put the world on notice that someone claims an interest in the property. In recording the deed, anyone who later desires to purchase the property can determine the true owner and any other interest claimed in the property.[6]

As a party named on the 1996 deed, Charles is presumed to have been a legal owner of it.

The Debtors assert, however, that despite being a record owner, his mother's "gift" to him never vested because he did not know about it and, therefore, could not have accepted it. The Debtors are correct that, generally, "[t]he essential elements for a valid *inter vivos* gift of real property are: (1) a present intention to make a gift to the grantee on the part of the grantor; (2) the grantor's execution and delivery to the

---

[4] *Sosne v. Gant (In re Gant)*, 178 B.R. 169, 172 (Bankr. E.D. Mo. 1995) (citing *In re Garner,* 952 F.2d 232 (8th Cir. 1991)).

[5] *Combs v. Rubin*, 101 B.R. 590, 592 (W.D. Mo. 1989); *In re Gant*, 178 B.R. at 172.

[6] *In re Gant*, 178 B.R. at 172 (footnote omitted). "Because a recorded interest is the best evidence of ownership of property, [a debtor's] recorded interest on the date of his bankruptcy filing must be respected." *Id.* at 171.

4

grantee of a deed or other proper written instrument evidencing the gift; and (3) acceptance of the deed or instrument by the grantee."[7] The party claiming that an *inter vivos* gift has been made bears the burden proving these elements by clear and convincing evidence.[8] On the other hand, however, when parents convey property to their children, "an inference or presumption of gift is raised and the burden is on the parent[s] to prove by clear and convincing evidence that a gift was not intended."[9]

In addition to the strong presumption of gift from parent to child, "[n]o precise language is required in order to create [a] gift. Conduct is an enlightening ingredient in discerning intent."[10] Signing and recording a warranty deed transferring the property to one's children is very strong evidence of a gift. In addition, signing and recording the deed evidences "delivery" of the property to the children.[11]

The Debtors assert, however, that Charles never accepted the gift because he did not know about it. However, acceptance can be presumed when a gift is beneficial

---

[7] *Wills v. Whitlock*, 139 S.W.3d 643, 653 (Mo. Ct. App. 2004).

[8] *Id.*

[9] *Prange v. Prange*, 755 S.W.2d 581, 593 (Mo. Ct. App. 1987) (citations omitted).

[10] *In re Hoffman's Estate*, 490 S.W.2d 98, 103 (Mo. 1973).

[11] *Keith v. Keith*, 599 S.W.2d 214, 217 (Mo. Ct. App. 1980) (stating that there is a rebuttable presumption that a deed is delivered on the day of its acknowledgment and that recordation may also raise, or perhaps add to, a presumption of delivery; further, a delayed recording does not necessarily defeat a presumption of earlier delivery upon acknowledgment) (citations omitted) (superceded by statute on other grounds).

and imposes no burden on the recipient.[12] As there was no evidence of any burden imposed on Charles as a result of his mother's deeding the property to him, his acceptance can be presumed. I find, therefore, that the gift was complete and that, if the 2009 transfer were avoided in a Chapter 7 case, the property would be property of Charles' bankruptcy estate.

However, "[t]he bankruptcy court is a court of equity, which means that it may issue orders that it deems necessary to carry out the provisions of the [Bankruptcy] Code."[13] As the Court in *In re Gant* said:

> While this grant of power is as broad as that language in § 105(a) [of the Bankruptcy Code], the Court is nevertheless guided and directed by state law and the Missouri courts in interpreting any equitable remedies available to [the Debtor and his mother], which may serve to alleviate some of the unfairness resulting from the presumptions in favor of a recorded deed.[14]

Missouri law has imposed implied trusts where equity requires. Although they have not expressly asked for the imposition of an implied trust, that is, in effect, what the Debtors seek here.

---

[12] See *In re Hoffman's Estate*, 490 S.W.2d at 103 (citing *Gosney v. Costigan*, 33 S.W.2d 947, 953 (Mo. 1930) (holding that, where a gift is not encumbered by a burden, acceptance will be presumed: "If A makes a gift to B of a sum of money or other property upon condition that B take into his home and care for A's aged mother for the remainder of her life, the gift would be incumbered [sic] with a burden, and acceptance of the gift could not be presumed, and evidence of actual acceptance would necessarily be required.")).

[13] *Id.*

[14] *Id.*

6

An implied trust results or arises by operation of law from the facts of the transaction, not from an agreement, and it results or arises, if at all, "at the instant the deed is taken."[15] The implied trust must result or arise from the facts occurring at the time of or anterior to the execution of the conveyance by which the title passes and cannot be created by subsequent occurrences.[16] In order to establish an implied trust, "an extraordinary degree of proof is required; a preponderance is not sufficient, but the evidence must be so clear, cogent, positive, and convincing as to exclude every reasonable doubt from the [court]'s mind" that a trust should be implied.[17]

Missouri courts recognize two classes of implied trusts: constructive trusts and resulting trusts.[18] A resulting trust is based on the presumed intention of the parties and arises where, and only where, the intent may be reasonably presumed, as determined from the facts and circumstances existing at the time of the transaction out of which the trust is sought to be established.[19] Dishonesty and deceit are not

---

[15] *Parker v. Blakeley,* 93 S.W.2d 981, 988 (Mo. 1936).

[16] *Id.* (citations omitted).

[17] *Id.* at 987-89 (citation and internal quotation marks omitted). *Accord In re Gant*, 178 B.R. at 173 (citations omitted) (further holding that imposing this equitable remedy rests on an extraordinary degree of proof).

[18] *Id.* at 989.

[19] *Id.* (citation omitted).

necessary ingredients of a resulting trust.[20]

The party seeking the establishment of a resulting trust bears the burden to show its existence by clear and convincing evidence to exclude all doubt from the mind of the court.[21] To establish a resulting trust, "an extraordinary degree of proof is required."[22]

As stated above, when parents convey property to their children, a presumption of gift is raised and the burden is on the parents to prove by clear and convincing evidence that a gift was not intended.[23] In situations where parents deed their property to their children, the courts recognize a distinction between whether (1) the parents intended to transfer a valid present interest to their children so that the children would, in fact, be the owners immediately so that, upon the parents' death, that property would not be in their probate estate, or (2) the parents did not intend to transfer any present interest to the children but believed (erroneously) that executing a deed purporting to make the children the owners would permit the parents' 100% interest

---

[20] *Id.* (citation omitted).

[21] *Matlock v. Matlock*, 815 S.W.2d 110, 113 (Mo. Ct. App. 1991) (citations omitted).

[22] *Id.* (citation omitted).

[23] *Prange v. Prange*, 755 S.W.2d 581, 593 (Mo. Ct. App. 1987) (citations omitted) (resulting trust found to exist in favor of family members who had paid for property, but titled it in the names of family members; no interest of the trustee or creditors involved).

to pass from them to their children upon their deaths.[24] The most obvious example of the latter would be a scrivener's error.[25]

Here, there was no evidence as to the mother's intent when she executed the warranty deed transferring the property to her children in 1996. Hence, the presumption requires that I conclude that she intended to make a gift to them at the time, most likely an effort to avoid probate, as many parents do.[26] The mother may have later changed her mind or regretted the decision, thus requesting Charles to deed the property back to her, but, based on the evidence presented, the Debtors have not met their burden of showing that deeding the property to him was a mistake at the time, and that his mother should benefit from a resulting trust.[27]

---

[24] *See, e.g., Combs v. Rubin*, 101 B.R. 590 (W.D. Mo. 1989).

[25] In *In re Gant*, 178 B.R. 169, the Court found that a realty company made an erroneous assumption that the property at issue there was to be titled in the names of both the Debtor and his wife, despite the couple's intent that the wife would own the property solely in her name.

[26] Many courts have held that a stated intent of financial planning, including the avoidance of probate, does not rebut the presumption that titling property in children's names is intended as a gift. *See Brousseau v. Brousseau*, 927 A.2d 773, 779-80 (Vt. 2007) (Dooley, J., dissenting) (listing cases). Indeed, although a number of courts have held to the contrary, "numerous courts have held that a stated intent of estate planning is in fact affirmative evidence of donative intent." *Id.* (citation omitted). That is so because the way to avoid probate is to give the property away.

[27] *Accord Matlock v. Matlock*, 815 S.W.2d 810, 113-14 (Mo. Ct. App. 1991) (affirming trial court's refusal to impose a resulting trust, despite the fact that the mother paid the full purchase price, paid the taxes, and paid for all improvements, because the evidence showed that, at the time of the execution of the deed, the mother intended to include her son and daughter-in-law's names on it).

Constructive trusts are an equitable remedy that rest upon public policy.[28] They have been described as "a fluid, flexible device which may be employed to remedy different types of injustice," including unjust enrichment or mistake.[29] At one point, Missouri courts required evidence of fraud or misconduct in order to impose a constructive trust; however, Missouri courts now impose constructive trusts "in broader circumstances, including where the evidence establishes that due to a mistake, the defendant received property belonging to plaintiff under conditions that in equity the defendant ought not be allowed to retain it."[30] The purpose of a constructive trust is to restore to the rightful owner property wrongfully withheld by the defendants, whether due to fraud, unjust enrichment, or mistake.[31] "The equities of the situation must shape the measure of the relief, if any."[32]

The parties may well consider between themselves that the property belonged to the mother all along, despite the fact that she transferred the property to her

---

[28] *Parker v. Blakely*, 93 S.W.2d at 988.

[29] *Brown v. Brown,* 152 S.W.3d 911, 918 (Mo. Ct. App. 2005) ("[T]he touchstone for imposition of a constructive trust is injustice or unfairness, which may take the form or be the product of fraud (actual or constructive), abuse of a fiduciary or confidential relationship, undue influence, or unjust enrichment.").

[30] *Id.* at 919.

[31] *In re McGehee*, 342 B.R. 587, 593 (Bankr. W.D. Mo. 2006) (citing *Parker v. Blakeley,* 93 S.W.2d at 988).

[32] *Brown v. Brown*, 152 S.W.3d at 918.

children. However, there is no mistake to correct because, as discussed above, the only evidence is that the manner of ownership is as the mother intended at the time she titled it in her children's name. Arguably, if Charles himself were attempting to enforce his ownership interest in the property as against his mother, she might have an unjust enrichment argument in defense, but here it is the Trustee, on behalf of Charles' creditors, who opposes the constructive trust.[33] As stated above, real property recordation in Missouri has "roots in history deeper [than] the birth of our nation," the purpose of which is to put the world on notice as to who owns or claims an interest in property. Had any of Charles' creditors done a search of property ownership when they were deciding to extend credit to him, they could very well have relied on the fact that the records showed he had a substantial interest in this property. I find, therefore, that Charles' creditors are not unjustly enriched by having the property included in his bankruptcy estate.

As stated above, the imposition of an implied trust is an equitable remedy, and I recognize that this may seem an unfair result to the Debtor and his mother. However, the problem here is that, while the titling of the property in her son's name has had unanticipated consequences since he has now filed bankruptcy, there is no

---

[33] *Compare, Prange*, 755 S.W.2d at 592-93 (in resulting trust context, suit was between family members only).

evidence that the mother titled the property in his name by mistake. As I have previously said, from an equitable standpoint, if the mother intended for her children to own the property for one purpose (such as to avoid probate), she should not be permitted to later say, when it benefits her, that her children do not own it at all.[34]

Since there is no basis on which to impose either a resulting or constructive trust in favor of the mother, Debtor Charles Bauer's interest in the property is property of the Debtors' bankruptcy estate. Under Missouri law, there is a presumption that if the deed does not specify the respective shares, co-tenants take equal undivided interests in the property, which presumption is rebuttable by proof that the co-tenants contributed unequal amounts toward the purchase of the property and there is neither a family relationship among the cotenants nor any evidence of donative intent on the part of those who contributed more than their pro rata amounts toward the purchase price.[35] In *Christen v. Christen*, the Missouri Court of Appeals held that unequal contribution is irrelevant in determining the joint tenants' respective shares when there is a family relationship between the tenants or when there is evidence of donative

---

[34] *In re McGehee*, 342 B.R. 587, 592-3 (Bankr. W.D. Mo. 2006) (finding no injustice in declining to impose an implied trust where the parents titled an account in the daughter-debtor's name to avoid Medicaid from getting it); *Nelson v. Killman (In re Killman*, 2010 B.R. 743685 (Bankr. W.D. Mo. Feb. 26, 2010) (holding that if the mother intended for her daughters to own the property to avoid probate, she should not later be able to say, when there are unanticipated consequences, that the daughters do not own it at all; when a parent gives property to their children, they run a risk).

[35] *Christen v. Christen*, 38 S.W.3d 488, 492 (Mo. Ct. App. 2001) (citations omitted).

intent.[36]  In other words, the *Christen* Court held, the presumption is irrebuttable when there is a family relationship.  In *Hoit v. Rankin*,[37] the Missouri Court of Appeals recently held that the Missouri caselaw precedent which held that a family relationship creates an irrebuttable presumption of equal ownership, including *Christen v. Christen,* was incorrect.  Instead, *Hoit v. Rankin* instructs that evidence of donative intent must be considered even when there is a family relationship.

Here, a family relationship exists between the owners of the property, and, therefore, they are presumed to own equal shares of it.  The *Christen* Court would end the analysis there.  However, even under *Hoit v. Rankin*'s directive to consider other evidence of donative intent, the parties here presented no evidence to rebut the presumption that the mother, as donor, intended that the persons listed on the deed would hold their interests equally.

Thus, according to the representations made at the hearing, Charles thus has a one-third interest in the property.  Consequently, the value of that one-third interest must be considered in a liquidation analysis.  As a result, the Debtors' proposed plan, which does not propose to pay that amount to unsecured creditors, cannot be confirmed pursuant to 11 U.S.C. § 1325(a)(4).

---

[36] *Id.  See also Nelson v. Killman (In re Killman)*, 2010 WL 743685 (Bankr. W.D. Mo. Feb. 26, 2010).

[37] 320 S.W.3d 761 (Mo. Ct. App. 2010).

ACCORDINGLY, the Trustee's Motion to Deny Confirmation is GRANTED. Debtors have twenty days in which to propose an amended plan, or the case will be dismissed.

/s/ Arthur B. Federman
Bankruptcy Judge

Date: 3/25/11